Dawson *vs.* Goodwin.

ERROR TO SPENCER CIRCUIT.

</div>

CHANCERY..

Case 45.

$\overline{15m\ 439}$
o102  47|

If, by mistake, in a judicial sale there be more land sold than it was in-tended to sell, the chancellor will hold the purchaser to account for the surplus to a creditor of the person as whose it was sold, giving to him the privilege of paying for it, or designating where it shall be laid off, at some side or end. The same principle of equity would apply if there should be a deficiency in quantity.

The facts of the case are stated in the opinion of the court.—*Rep.*

*Riley & Muir*, for plaintiff—

1. The survey in this case shows a surplus of thir-ty-one acres. The parties all supposed the tract to contain one hundred and sixty-seven acres, when it actually contained one hundred and ninety-eight acres. Estimating that quantity at the price for which the other was sold it makes about the sum of $125. In equity who is entitled to this? The man who never paid anything for it, and who has all he bargained for without it, or the creditor who has an unsatisfied mortgage lien upon it. It is true Good-win purchased at a judicial sale; but are judicial sales an exception to the general rule governing this subject? We know of no case in which it has been so held, and we perceive no good reason why it should be so adjudged. In this alone the court below dif-fered from us. If it had been a private sale, we pre-sume there would have been no question of the right to recover for the surplus. This is, we suppose, the

only question for adjudication in the case, and believing that the Circuit Court erred, respectfully ask a reversal.

*Grigsby & Newman,* for appellee—

The rule of law governing private sales has never been applied to judicial sales, and it is not reasonable that it should. In private sales the parties act deliberately—may carefully examine the evidence of title and the subject of sale; but in judicial sales the parties must, from the nature of the case, be governed by the title papers alone as to quantity. They frequently call for less, (rarely more,) land than is in the survey. There is no case in the decisions of this court, so far as we know, in which it has been held that a party purchasing land under execution or the decree of a court, has been required to account for a surplus. If such should be the decision, then the end of one law suit would be but the foundation of another. Public policy requires that such sales should be upheld—that the court should not sell a false title or more than it has power to sell. And as time is given for exceptions to sales, and none made— the sale approved by the court and title conveyed, the sale should not for any slight cause be overhauled. We ask an affirmance.

.January 10.

Judge CRENSHAW delivered the opinion of the Court—

Dawson and Eli Goodwin having each a lien upon a tract of land, estimated at one hundred and sixty-seven acres, brought their suits against Snider, the equitable owner, and others, to subject the land to the satisfaction of their respective claims. The land was decreed to be sold by the chancellor, as a tract of one hundred and sixty-seven acres, and John Goodwin became the purchaser. By the sale money the claim of Eli Goodwin was satisfied, but a considerable balance remained due upon the claim of Dawson, after the application towards its extin-

guishment of the portion of the sale money going to him.

Not long after the purchase by John Goodwin, at the commissioner's sale, it was ascertained, as the bill charges, that the tract really contained some one hundred and ninety-eight acres, being thirty-one acres more than it had been supposed to contain at the time of the purchase by John Goodwin, or at any prior time. And this suit was brought to subject the surplus in the tract to sale to satisfy the remainder of the claim of Dawson, not satisfied by the previous sale, Snider, the debtor, being insolvent.

By a survey made in the progress of the suit, the surplus was ascertained to be about thirty-one acres, but the court refused to subject it to the demand of the plaintiff, and dismissed the bill.

John Goodwin acknowledges that he purchased the land as a tract containing one hundred and sixty-seven acres, more or less, and says that his purchase was in gross and not by the acre. All the title papers, referred to, show that the tract had always been estimated to contain one hundred and sixty-seven acres only. It was purchased as containing that quantity by Goodwin, as conceded by him, and although it was a purchase in gross, and not by the acre, we presume that had the sale been a private, and not a public one, there could be but little doubt that so large a surplus in proportion to the whole tract, would not be regarded as risked by the vendor. Nor, had the quantity fallen short by the same number of acres, that it was risked by the purchaser. On the contrary, we apprehend that the vendor and purchaser would each be entitled to relief, accordingly as the tract might be ascertained to contain so large a surplus, or to fall short by so great a deficiency. And we are not able to perceive any good reason why a sale made as this was, at public auction, by a commissioner of the court, under a decree, should make a difference in the rights of the parties to indemnity for an innocent mistake in regard to

If, by mistake, in a judicial sale there be more land sold than it was intended to sell, the chancellor will hold the purchaser to account for the surplus to a creditor of the person as whose it was sold, giving to him the privilege of paying for it or designating where it shall be laid off, at some side or end. The same principle of equity would apply if there should be a deficiency in quantity.

quantity. If there be a surplus sufficiently large to call for the interposition of the chancellor in a private sale, we think his aid should be equally extended to the injured party in case of a public sale made by his own order. If there be such a surplus, it should be regarded as belonging to the debtor for whose debt the tract had been sold; and if there be such a deficiency, the purchaser should look to the party for indemnity for whose benefit and at whose instance the sale was made, and who has received the proceeds of the sale to an extent beyond what he ought to have received in consequence of the mistake. There is no difference, as it appears to us, in the equities of the parties in both states of case. But in a public sale, under decree, the owner is not the vendor, he is passive and under coercion, and the sale is by an officer of the law; and we suppose that *he* might not be liable for a deficiency, but the surplus should be regarded as belonging to him for the purposes of this suit. Thus regarding him in this case, and he being still indebted to the plaintiff and insolvent, we see no good reason why the surplus in the tract should not be subjected to the satisfaction of the plaintiff's demand.

Whether former vendors of the land who are not made parties, may or may not be entitled, as against their vendees of the land for the same surplus, would depend upon circumstances attending their sales, and is not a legitimate subject of inquiry in this suit. They do not appear, with any certainty, to be interested in this controversy, and hence we perceive no defect of parties.

As in other cases of suits for surplus land, the vendee will have a right to say on what side or end of the tract the surplus shall be laid off, or to retain the entire tract, paying to the plaintiff, to the extent of his claim, for the surplus land the rate per acre which he gave for the entire tract as a tract of one hundred and sixty-seven acres.

Wherefore, the decree is reversed, and the cause remanded for a decree in conformity to the principles of this opinion.